**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

        Plaintiff,

        v.

CHAD WILLIAMS,

        Defendant.

**REPORT AND RECOMMENDATION**
11-CR-6098

### Preliminary Statement

By text Order of Judge Charles J. Siragusa, dated May 24, 2011, all pre-trial motions have been referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(A)-(B). (Docket # 3). Currently before the Court is a motion to dismiss the Indictment by defendant Chad Williams. (Docket # 20). The Government has filed papers in opposition to this motion. (Docket # 23). On January 23, 2012, the Supreme Court issued its Reynolds v. United States, ___ U.S. ___, 132 S. Ct. 975 (2012) decision which addresses issues presented in defendant's motion to dismiss. This Court directed the parties to file supplemental briefs to address the effect Reynolds has on defendant's motion. On February 27, 2012, defendant filed a supplemental brief in further support of his motion (Docket # 32), and on March 30, 2012, the Government filed its supplemental brief in further opposition (Docket # 37). On April 13, 2012, a hearing was held and arguments were heard from the parties. The Court directed further supplemental briefing on

various issues.  On April 24, 2012, defendant filed a second supplemental brief (Docket # 39), and on May 30, 2012, the Government filed its second supplemental brief (Docket # 56).  The following is my Report and Recommendation as to the defendant's motion.

## Factual Background

SORNA:  On July 27, 2006, the federal Sex Offender Registration and Notification Act ("SORNA" or "the Act") was enacted.  42 U.S.C. § 16911 et seq.  SORNA requires convicted sex offenders to provide State governments with personal information, including their names and current addresses, for state and federal sex offender registries, and to update such information. Under the Act, it is a crime for a person who is required to register who "travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country" to "knowingly fail[] to register or update a registration as required by" the Act.  See 18 U.S.C. § 2250(a).  The Act authorizes the Attorney General "to specify the applicability of the [registration] requirements of this subchapter to sex offenders convicted before" SORNA's enactment.  42 U.S.C. § 16913(d).  The Attorney General is also directed in the Act to "issue guidelines and regulations to interpret and implement" the Act.  Id. at § 16912(b).

In Reynolds v. United States, ___ U.S. ___, 132 S. Ct. 975 (2012), the Supreme Court resolved a Circuit split and held that

SORNA is not automatically retroactive to sex offenders convicted before July 26, 2007, the Act's effective date. Instead, the Court held that "pre-Act" sex offenders cannot be held to the requirements of SORNA until the Attorney General properly issues regulations specifying that the Act's registration provisions apply to them. Id. at 984 ("[W]e conclude that the Act's registration requirements do not apply to pre-Act offenders until the Attorney General so specifies.").

What Reynolds explicitly left open, however, was which, if any, of the post-SORNA rules and guidelines issued by the Attorney General are valid and enforceable against pre-Act offenders. There are three separate administrative rules or guidelines issued by the Attorney General which have been the subject of post-Reynolds litigation. First, on February 28, 2007, the Attorney General issued an "interim rule" making SORNA effective immediately to all sex offenders, including those convicted of eligible offenses before SORNA was enacted. See 28 C.F.R. § 72.3. Second, on May 30, 2007, the Attorney General published proposed guidelines from the Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking ("SMART Guidelines") reiterating the authority of the Attorney General to make SORNA applicable to sex offenders "whose convictions predate" the effective date of SORNA. See Notice, 72 Fed. Reg. 30201-01 (proposed May 30, 2007). The SMART Guidelines were subject to public comment, were published in

a final version on July 2, 2008, and took effect on August 1, 2008. Finally, on December 29, 2010, the Attorney General "finalized" the interim rule issued in February 2007. The finalized interim rule became effective on January 28, 2011.

SORNA and Chad Williams: On November 28, 2001, defendant Chad Williams was convicted in New York State Monroe County Court of Rape in the Second Degree, a sexual offense, in violation of New York Penal Law § 130.30, and was sentenced to seven years in prison. Upon his release from prison in 2007, Williams completed his initial sex offender registration in compliance with New York State's sex offender registry. At some point between June 2009 and March 2011, the Government alleges that Williams traveled from New York State to the State of Georgia. The Government claims Williams never updated his sex offender registration in New York and did not register or update a sex offender registration upon his arrival in Georgia. On May 17, 2011, a federal grand jury sitting in the Western District of New York returned an Indictment charging the defendant with one Count of Failure to Register As a Sex Offender in violation of 18 U.S.C. § 2250(a). See Indictment (Docket # 1).

There is no dispute that Williams is a pre-Act offender. In the post-Reynolds world, the date on which the requirements of SORNA became applicable to Williams determines the viability of his prosecution by the Government. Here, Williams asserts that the

Indictment should be dismissed because he was not subject to SORNA's registration requirements until the Final Rule by the Attorney General became effective in January 2011. On this basis, Williams seeks dismissal of the Indictment.

## Discussion

Williams allegedly first traveled to Georgia sometime in 2009. Therefore, if it was not until the Attorney General's implementation of the Final Rule in 2011 that SORNA became applicable to pre-Act sex offenders, then under <u>Reynolds</u> Williams is not subject to prosecution. On the other hand, if <u>either</u> the Attorney General's 2007 interim rule or the 2008 SMART guidelines were legally sufficient to notify pre-Act offenders like Williams that the Act's registration provisions apply to them, then Williams's argument that SORNA's registration requirements did not apply to him must fail.

As to the Attorney General's 2007 interim rule, there is a split in the Circuits as to whether the Attorney General provided reasons sufficient to establish good cause to bypass the Administrative Procedure Act's ("APA") notice, comment and publication requirements and thus make the interim rule immediately effective. <u>Compare</u> <u>United States v. Dean</u>, 604 F.3d 1275, 1279-82 (11th Cir. 2010)(holding that "the public safety argument advanced by the Attorney General is good cause for bypassing the notice and

comment period"), and United States v. Gould, 568 F.3d 459, 470 (4th Cir. 2009)(finding that on February 28, 2007 the Attorney General had good cause to invoke the exception to the APA because "[t]here was a need for legal certainty about SORNA's 'retroactive' application to sex offenders convicted before SORNA" and he had "a concern for public safety that these offenders be registered ... as quickly as possible"), with United States v. Johnson, 632 F.3d 912, 928 (5th Cir. 2011)(finding the Attorney General's reasons for bypassing the APA's notice and comment provisions unpersuasive), and United States v. Valverde, 628 F.3d 1159, 1169 (9th Cir. 2010)(holding that the Attorney General's reasons for bypassing the APA's procedural requirements did not constitute good cause), and United States v. Cain, 583 F.3d 408, 420-24 (6th Cir. 2009)(finding that the Attorney General did not provide reasons sufficient to establish that he had good cause to bypass the APA's notice, comment and publication requirements). The Second Circuit has not yet decided whether the interim rule was effective and Williams urges the Court to adopt the reasoning of the Fifth, Sixth and Ninth Circuits in holding the Attorney General's interim rule ineffective as to pre-Act offenders.

In Williams's case however, I need not decide whether the Attorney General had good cause for bypassing the APA's procedural requirements because I agree with every court that has addressed this issue, that the SMART Guidelines, effective August 1, 2008,

were a proper and valid exercise of the Attorney General's authority and effectively made SORNA applicable to pre-Act sex offenders. As one district court within the Second Circuit recently held: "[T]he 2008 SMART Guidelines mark the <u>latest point</u> at which any Circuit to address the question has found SORNA to apply to pre-Act sex offenders." <u>United States v. Lott</u>, No. 2:11-cr-97, 2012 WL 2048218, at *5 (D. Vt. June 6, 2012)(emphasis added). <u>See</u> <u>United States v. Stevenson</u>, 676 F.3d 557, 561 (6th Cir. 2012)(collecting cases). Williams's travel allegedly occurred between June 2009 and March 2011 – well after the 2008 SMART Guidelines went into effect. As a result, I find that the defendant's travel took place long after SORNA's retroactivity became effectively applied to him.

Williams seeks to avoid the effective date of the SMART Guidelines by arguing that they "are not 'valid specifications.'" <u>See</u> Defendant's Supplemental Brief (Docket # 39) at p. 4. Williams claims that the SMART Guidelines are "interpretative" rules rather than "legislative" rules and, as a result, do not "have the force of law" that legislative rules have. <u>Id.</u> at pp. 5-6. Defendant contends that interpretative rules "only clarify existing laws, do not have the force of law and cannot be considered a 'valid specification." <u>Id.</u> at p. 6.

Earlier this year, the Sixth Circuit rejected the same argument made by a similarly situated pre-Act sex offender with

7

respect to the validity of the SMART Guidelines. <u>United States v. Stevenson</u>, 676 F.3d 557 (6th Cir. 2012). The reasoning in <u>Stevenson</u> is persuasive and therefore is set forth fully below:

> [T]he defendants argue that the SMART guidelines should not be deemed a valid rule *on retroactivity* because they were promulgated pursuant to the Attorney General's authority under § 16912(b), not his authority under § 16913(d). They argue that § 16912(b) authorizes the Attorney General to issue only interpretative guidance on SORNA, not substantive rules, and even if § 16912(b) did authorize substantive rules, a rule regarding retroactivity promulgated under § 16912(b) would be outside the scope of the enabling statute because only § 16913(d) gave the Attorney General the power to establish retroactivity. We reject these arguments for three reasons.
>
> First, the SMART guidelines themselves adequately make reference to both § 16912(b) and § 16913(d) for legislative authority. The defendants are correct that the proposed guidelines state that they were enacted to "carry out a statutory directive to the Attorney General in section 112(b) of SORNA (42 U.S.C. 16912(b)) to issue guidelines to interpret and implement SORNA." 72 Fed.Reg. 30,210, 30,210. However, in the discussion of retroactivity, the proposed SMART guidelines do not merely refer back to the Interim Rule, as the defendants claim. The SMART guidelines state: "The applicability of the SORNA requirements is not limited to sex offenders whose predicate sex offense convictions occur following a jurisdiction's implementation of a conforming registration program. Rather, SORNA's requirements apply to all sex offenders, including those whose convictions predate the enactment of the Act." 72 Fed.Reg. 30,210, 30,212. Only then does the provision reiterate that the Attorney General has the authority to do so "pursuant to the authority under SORNA section 113(d) [§ 16913(d) ]" and did in fact do so in the Interim Rule. *Id.* The APA does not require that the proposed rule cite the relevant legal authority in a certain location, but rather requires just that notice must be given for any proposed rule. 5 U.S.C. § 553(b)(2). We do not hesitate to find that the SMART guidelines adequately gave notice of the relevant legal authority in this case.

Second, even if the SMART guidelines were solely promulgated under § 16912(b), the Attorney General still had the authority to address the retroactivity of SORNA in substantive rules pursuant to § 16912(b), because § 16912(b) incorporates by reference § 16913(d).

As an initial matter, the defendants are incorrect that § 16912(b) provides the Attorney General authority solely to interpret SORNA and not to make substantive rules. By its own terms, § 16912(b) authorizes the Attorney General to make both interpretative and substantive rules because it unambiguously permits the Attorney General to make rules regarding both the interpretation *and* implementation of the sections therein. Substantive rules are "rules that *implement* the statute." *Chrysler Corp. v. Brown*, 441 U.S. 281, 302 n. 31, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979) (internal quotation marks omitted) (emphasis added). Interpretive rules, which explicate the meaning of statutes, are less restrictive because they do not have the force or effect of law. *Id.* When, as here, Congress has "directly spoken to the precise question at issue ... [we] must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *Citizens Coal Council v. U.S. E.P.A.*, 447 F.3d 879, 890-92 (6th Cir.2006) (en banc). Section 16912(b) unambiguously gives the Attorney General the authority to make substantive rules on how to implement SORNA.

Section 16912(b) also unambiguously instructs the Attorney General to make the necessary regulations to "implement this subchapter." 42 U.S.C. § 16912(b). The applicable "subchapter" in this case is "Subchapter I—Sex Offender Registration and Notification," 42 U.S.C. §§ 16901-16962. Section 16913(d) indisputably falls within that subchapter. Although § 16912(b) does not explicitly authorize the Attorney General to make rules on retroactivity, we cannot ignore that § 16912(b) instructs the Attorney General to implement the subchapter, and the subchapter includes the specific option of making a rule on retroactivity. *See Reynolds*, 132 S.Ct. at 981-82 (recognizing Congress charged the Department of Justice with examining the many potential applications of SORNA and implementing SORNA accordingly, citing in part § 16912(b)); *see also Chevron*, 467 U.S. at 842-43, 104 S.Ct. 2778 (deferring to agency's permissible construction of the statute if language is ambiguous).

When Congress broadly authorizes an agency to implement the remainder of a statute in one section and then specifies in the very next section a specific type of rule the agency is expressly authorized to make, we can hardly fault the agency for citing the section giving it broad authorization when issuing substantive rules including the specific one expressly authorized in another section of the exact same statute. This is consistent with our review of agency rules with reference to the enabling statute as a whole, not any particular provision in isolation. *Nat'l Cotton Council of Am. v. U.S. E.P.A.*, 553 F.3d 927, 933 (6th Cir.2009) (citing *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 666, 127 S.Ct. 2518, 168 L.Ed.2d 467 (2007)), *cert. denied*, --- U.S. ----, 130 S.Ct. 1505, 176 L.Ed.2d 110 (2010); *see also Riverkeeper, Inc. v. U.S. E.P.A.*, 358 F.3d 174, 185–86 (2d Cir.2004) (analyzing extent of agency's authorization in enabling statute with reference to other sections explicitly cross-referenced in statute). Best practices may include citing all relevant sections of an enabling statute, but failure to do so does not establish that this rule was outside the scope of Congress's authorization.

Finally, any error with respect to the Attorney General's recitation of the proper legal authority was not prejudicial. *See* 5 U.S.C. § 706. As we discussed in *Utesch*, 596 F.3d at 311–13, the key to whether an agency's procedural error in promulgating a rule is harmless error hinges not on whether the same rule would have issued absent the error, but whether the affected parties had sufficient opportunity to weigh in on the proposed rule. *Id.* at 312 (citing *Riverbend Farms, Inc. v. Madigan*, 958 F.2d 1479, 1487 (9th Cir.), *cert. denied*, 506 U.S. 999, 113 S.Ct. 598, 121 L.Ed.2d 535 (1992)). "[W]hen the purposes of the procedural requirements have been fully met, there is no need for the courts to require rigid adherence to formalistic rules." *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1174 (6th Cir.1983), *cert. denied*, 465 U.S. 1100, 104 S.Ct. 1595, 80 L.Ed.2d 127 (1984). Even if the proposed SMART guidelines referenced primarily § 16912(b), they also unequivocally stated that the SORNA would apply retroactively. The Attorney General received and addressed numerous comments from the public on the issue of retroactivity. *See* 73 Fed.Reg. 38,030, 38,035–36. Therefore, the parties cannot complain of either a lack of adequate notice or opportunity to be heard

>meaningfully on the issue of retroactivity. *See Utesch*, 596 F.3d at 310 (requiring "actual consideration of public commentary"); *Brown*, 710 F.2d at 1173. We are therefore confident that the Attorney General's initial citation to § 16912(b), even if a technical violation of the APA's notice requirement, "clearly had no bearing on the procedure used or the substance of decision reached." *Riverbend Farms*, 958 F.2d at 1487 (internal quotation marks omitted).
>
>For all these reasons, the SMART guidelines can and do have the force and effect of law, and they establish that SORNA became retroactive as of August 1, 2008. The Attorney General was properly delegated authority by Congress to enact the substantive rule regarding retroactivity and the authority to implement SORNA. The SMART guidelines clearly set forth the rule on retroactivity and the authority to issue such a rule and were properly promulgated pursuant to all of the other notice-and-comment requirements in the APA. They became final on August 1, 2008, thirty days after they were published. *See Utesch*, 596 F.3d at 310-11; *Trent*, 654 F.3d at 582-83.

United States v. Stevenson, 676 F.3d at 563-66 (internal footnotes omitted).  I agree with the reasoning set forth in Stevenson and find that the SMART Guidelines establish that SORNA became retroactive in 2008.  Since Williams's alleged travel began in 2009, he was subject to SORNA's requirements. Accordingly, it is my Report and Recommendation that his motion to dismiss the Indictment because he was not subject to SORNA's registration requirements until the Final Rule by the Attorney General became effective in January 2011 should be **denied.**

2.   Defendant's Remaining Arguments:

Defendant's remaining arguments for dismissing the Indictment

are that (i) the *Ex Post Facto* Clause bars his prosecution, (ii) SORNA violates the Tenth Amendment, (iii) a violation of the non-delegation doctrine exists here, and (iv) SORNA violates the Commerce Clause.  Defendant acknowledges that each of those arguments is expressly foreclosed by Second Circuit case law.[1] United States v. Guzman, 591 F.3d 83 (2d Cir. 2010)(rejecting *Ex Post Facto Clause*, Commerce Clause, Tenth Amendment, non-delegation doctrine, and failure to implement arguments), cert. denied, 130 S. Ct. 3487 (2010).  Therefore, I find that those claims are precluded by binding precedent and cannot form the basis for dismissing the Indictment.  Accordingly, it is my Report and Recommendation that defendant's motion to dismiss the Indictment (Docket # 20) on these additional grounds be **denied.**

## Conclusion

For the foregoing reasons, it is my Report and Recommendation that defendant's motion to dismiss (Docket # 20) be **denied.**
**SO ORDERED.**

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: September 4, 2012
Rochester, New York

---

[1] Williams makes these arguments to preserve them in the event of further Supreme Court analysis of SORNA.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b)(2) of the Local Rules of Criminal Procedure for the Western District of New York.[2]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b)(2) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections ... shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." **Failure to comply with the provisions of Rule 59(b)(2) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

**SO ORDERED.**

_____
Jonathan W. Feldman
United States Magistrate Judge

Dated:   September 4, 2012
         Rochester, New York

---

[2] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(D) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed. United States v. Andress, 943 F.2d 622 (6th Cir. 1991); United States v. Long, 900 F.2d 1270 (8th Cir. 1990).